# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 17-822V
Filed: April 29, 2019

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

FELICA THOMAS, *as executor for the*
*estate of* ZAIRE CORVELL THOMAS,
*deceased,*

     Petitioner,

v.

SECRETARY OF HEALTH
AND HUMAN SERVICES,

     Respondent.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

UNPUBLISHED

Decision on Attorneys' Fees and Costs;
Reasonable Basis

*Jessica Wallace, Esq.*, Siri & Glimstad, LLP, New York, NY, for petitioner.
*Sarah Duncan, Esq.*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

**Roth**, Special Master:

  On June 19, 2017, Felica Thomas ("Ms. Thomas," or "petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program[2] on behalf of her deceased son, Zaire Corvell Thomas ("Zaire"). Petitioner alleges that Zaire suffered from sudden cardiac death and other injuries after receiving diphtheria-tetanus-acellular pertussis ("DTaP"),

---

[1] Although this Decision has been formally designated "unpublished," it will nevertheless be posted on the Court of Federal Claims's website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). **This means the Decision will be available to anyone with access to the internet.** However, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id.*

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

hepatitis B, inactivated poliovirus ("IPV"), haemophilus influenzae b ("Hib"), pneumococcal conjugate, and rotavirus vaccinations on December 23, 2015. Petition ("Pet."), ECF No. 1.

## I. Background

### A.   Zaire's Health Prior to the Allegedly Causal Vaccines

Zaire was born on October 22, 2015. Pet. Ex. 2 at 11. The pregnancy was complicated by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and elevated alpha-fetaprotein with a normal anatomy scan and normal serial ultrasounds. Pet. Ex. 8 at 6; Pet. Ex. 2 at 10. Petitioner's prenatal labs indicated she was positive for ▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮, for which she was prescribed ▮▮▮▮▮ and ▮▮▮▮▮▮, respectively. Pet. Ex. 2 at 10-11. Zaire's hearing and congenital heart disease screens were normal. *Id*. He received a hepatitis B vaccine on October 24, 2015. Pet. Ex. 4 at 48.

On November 10, 2015, Zaire was presented to the pediatrician for a weight check. Pet. Ex. 2 at 18. He was 30 percent above his birth weight. *Id*. He was taking a daily multivitamin. *Id*. at 19.

Zaire was presented to the pediatrician on December 23, 2015, for his 2-month well-child visit. Pet. Ex. 2 at 24. Zaire was diagnosed with thrush and diaper rash and prescribed mycostatin. *Id*. at 25. He was administered DTaP, hepatitis B, IPV, hib, pneumococcal conjugate, and rotavirus vaccines. *Id*. at 28.

### B.   Zaire's Health After the Allegedly Causal Vaccines

The next documented medical visit occurred on February 17, 2016, when petitioner presented Zaire to his pediatrician with concerns about Zaire spitting up. Pet. Ex. 2 at 33. Petitioner reported that, for the past month, Zaire was spitting up after every feeding. *Id*. at 34. Petitioner advised that she had a history of acid reflux and a family history of gastroesophageal reflux disease ("GERD"). *Id*. at 33-34. Petitioner reported that Zaire was not gagging or choking and did not have colic symptoms. *Id*. at 33. Zaire had a normal exam "with good weight gain," and was described as "alert and very content at present." *Id*. The pediatrician suggested thickening the breast milk with infant rice cereal. *Id*.

Petitioner submitted an affidavit in which she stated that during this visit, she expressed concerns about a possible vaccine reaction "but felt as though [she] was completely ignored." Pet. Ex. 1 at 2. The medical records did not reflect any concerns raised by Ms. Thomas at this visit about a vaccine reaction. The petition alleged that over the course of February 2016, Zaire became fussier and had frequent crying paroxysms. Pet. at ¶9. There was no reference to this in the medical records. There was a phone call to the pediatrician's office on February 16, 2016, regarding Zaire spitting up and petitioner's concern for reflux. Pet. Ex. 4 at 37.

According to the Petition, on February 28, 2016, petitioner took Zaire to the ER, due to "persistent and worsening cramping following his February 17, 2016 visit." Pet. Ex. 1 at 2. The emergency room records document that petitioner reported for the past two days, Zaire had respiratory congestion, vomiting, and diarrhea, and was making grunting noises when he cried.

Pet. Ex. 4 at 51. Zaire had not had these symptoms in the past. *Id*. He was not tugging at his ears and did not have a fever. *Id*. His vital signs were stable, his abdomen was non-tender, and he was breathing well. *Id*. at 53. Zaire was noted to be comfortable, afebrile, and well-hydrated; he cried, but was easily distracted. *Id*. at 52-53. The differential diagnoses included upper respiratory infection, bronchiolitis, and gastroenteritis. *Id*. His presentation was deemed to be most consistent with a viral process. *Id*. at 53. Ms. Thomas reported that Zaire was fed 20 minutes ago and "kept it down." *Id*. at 50. He was placed on continuous oxygen and given Pedialyte in a bottle. *Id*. Shortly thereafter, Zaire went to sleep. His parents were advised to continue supportive care and take Zaire home. *Id*. A nurse made a follow-up call to Zaire's parents the next day (February 29), and was told that "everything is fine." *Id*.

On March 3, 2016, petitioner presented Zaire to his pediatrician for his 4 month well child check. Pet. Ex. 2 at 39. The pediatrician's record reflects that Zaire was seen by the ER on February 28 for vomiting and diarrhea which had resolved. *Id*. Zaire had a normal exam and was noted to have normal growth and development. *Id*. The medical record described Zaire as "alert and interactive." *Id*. He did not have any active problems. *Id*. at 40. Zaire had tried rice cereal, which he liked. *Id*. He received DTaP, hepatitis B, IPV, hib, pneumococcal conjugate, and rotavirus immunizations. *Id*. at 42. In her affidavit, petitioner stated that she expressed concern about Zaire receiving any more vaccinations; these concerns are not reflected in the medical records. Pet. Ex. 1 at 2. Petitioner further affirmed that Zaire screamed loudly while receiving the second round of vaccinations. *Id*. At an interview with child services on March 5, 2016, petitioner reported that Zaire cried when he received his vaccines but was easily soothed. Pet. Ex. 4 at 143-44.

In her affidavit, petitioner stated, on the afternoon of March 3, 2016, Zaire developed a low-grade fever, which she treated with Motrin. Pet. Ex. 1 at 2. On March 4, 2016, Zaire "re-developed labored breathing and a self-limited blank stare." *Id*. Later that morning, petitioner placed Zaire down for a nap on the couch. *Id*. Approximately 30 minutes later, she checked on him and discovered that he was limp and had stopped breathing. *Id*.

The medical records reflect that on March 4, 2016 at 12:49 pm, Zaire arrived at St. Mary's Sun Prairie ER via EMS. Pet. Ex. 3 at 5. During transport, Zaire received multiple doses of epinephrine but there was no return of spontaneous circulation. *Id*. at 6. Upon arrival at the ER, petitioner reported Zaire had been in his usual state of health on March 3, 2016, until around 2:00 am on March 4, 2016, when he had "an episode of possible shaking and limited responsiveness" that "seemed to resolve." Pet. Ex. 3 at 6. The ER record states that petitioner found Zaire unresponsive 10 minutes after putting him down on the couch. *Id*. A letter to the pediatrician from the treating physician at the hospital stated that petitioner reported laying on the couch with Zaire for half an hour before getting up; 15 to 20 minutes later, petitioner's four-year-old daughter found Zaire limp and unresponsive. *Id*. at 101.

He was diagnosed with cardiac arrest. Pet. Ex. 3 at 8. A critical care flight to the University of Wisconsin Hospital ("UWH") was arranged. *Id*. Upon his arrival, petitioner reported Zaire's four-year-old brother found him unresponsive and alerted petitioner. Pet. Ex. 4 at 79.

A head CT performed at UWH was "concerning for diffuse anoxic brain injury." Pet. Ex. 4 at 114. Zaire was admitted to the pediatric intensive unit. *Id*. at 84. A babygram showed left

lower lobe lung consolidation and gas-filled loops of bowel in the mid and lower abdomen, which was concerning for shock bowel. *Id*. It was also noted that Zaire had osteopenia, frayed metaphyses, and prominent costochondral junctions, concerning for vitamin D deficiency. *Id*. Upon neurological evaluation, Zaire was comatose; he did not respond to voice or tactile stimulation, his pupils were fixed and dilated, he did not have spontaneous respiration, cough, or deep tendon reflexes, he did not respond to sternal pressure, and he did not withdraw from pain. *Id*. at 85. An evaluation for formal brain death was suggested. *Id*. An EEG performed on March 6, 2016, showed "catastrophic global cerebral dysfunction." *Id*. at 118. He was declared brain dead on March 7, 2016. *Id*. at 138. A whole-body CT scan revealed "diffuse mild osteopenia," "consistent with rickets, most commonly resulting from a vitamin D deficiency." *Id*. at 288. Zaire remained on life support until organ donation on March 8, 2016. *Id*. at 134.

An autopsy conducted found diffuse osteopenia, irregular metaphyses, and irregular costochondral junctions "consistent with [the] antemortem diagnosis of probable Vitamin D deficiency/rickets." Pet. Ex. 5 at 7. Zaire was in the fiftieth to seventy-fifth percentile for weight but the tenth percentile for length. *Id*. The medical examiner noted that Zaire's bones were so soft, she could "bend [the] temporal bone in half without fracturing it." *Id*. The death certificate lists cause of death as "anoxic brain injury due to cardiopulmonary arrest" as a result of "hypocalcemia[3] and hypovitaminosis D.[4]" Pet. Ex. 10 at 1.

## C.    Procedural History

On June 19, 2017, petitioner filed a Petition which stated Zaire was a "happy baby" who suffered no health problems other than occasional diaper rash prior to receiving DTaP, hepatitis B, IPV, hib, pneumococcal conjugate, and rotavirus vaccinations on December 23, 2015. Pet. at ¶¶2-4. After his December vaccinations, Zaire developed gastric reflux, irritability, and intermittent vomiting. *Id*. at ¶5. During February of 2016, Zaire's "mood and affect changed markedly." *Id*. at ¶9. While receiving additional vaccinations in March, Zaire "erupted in a high-pitched scream the type and violence of which he had never before demonstrated." *Id*. at ¶11. Later that afternoon, Zaire developed a low-grade fever and was given Motrin. *Id*. at ¶13. Early the next morning, Zaire was "increasingly fussy" and "experienced a self-limited episode of shaking convulsions and developed a blank stare consistent with an absence seizure." *Id*. at ¶14. Zaire was found unresponsive later that day; despite extensive medical intervention, he was later declared brain dead. *Id*. at ¶¶15-20. The Petition alleged that Zaire's injuries were caused "by his battery of six vaccinations at his fourth-month periodic wellness visit; worsening problems with his vaccination reactions had been noted by his mother but ignored by his health-care providers over the preceding three months." *Id*. at ¶21.

Petitioner filed medical records and a Statement of Completion on June 20, 2017. Petitioner's Exhibits ("Pet. Ex.") 1-10, ECF No. 4; Statement of Completion, ECF No. 5.

---

[3] Hypocalcemia is a reduction of the blood calcium below normal; manifestations include muscle and abdominal cramps. *Hypocalcemia*, DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 900 (32d ed. 2012) [hereinafter DORLAND'S].

[4] Hypovitaminosis D is a deficiency of vitamin D, which can lead to rickets in children. Hypovitaminosis, DORLAND'S at 908; *vitamin D*, DORLAND'S at 2068.

This matter was initially assigned to the Special Processing Unit ("SPU"). ECF Nos. 6-7. During the initial status conference on August 18, 2017, respondent's counsel advised that, although the medical records appeared to be complete, respondent had not yet determined his position. Scheduling Order at 1, ECF No. 11. Respondent's counsel pointed out that there was a potential alternative cause for Zaire's death, and suggested filing either a Rule 4(c) Report or a status report within 60 days. *Id*. at 1-2. Respondent's deadline to file either his Rule 4(c) Report or a status report indicating his position by October 17, 2017. *Id*. at 2.

Respondent filed his Rule 4(c) Report ("Resp. Rpt.") on October 17, 2017, submitting that compensation was not appropriate in this matter. Resp. Rpt. at 1-2, ECF No. 12. Respondent pointed out that the medical examiner opined that Zaire's death was due to hypocalcemia and hypovitaminosis D. *Id*. at 11-12.

On October 19, 2017, this matter was reassigned to me. *See* ECF Nos. 13-14.

During a status conference held on November 29, 2017, I discussed the medical records in detail and noted the discrepancies between petitioner's affidavit and the medical records. Scheduling Order at 1-3, ECF No. 15. Additionally, I noted that Zaire's cause of death was documented as "anoxic brain injury due to cardiopulmonary arrest" as a result of hypocalcemia and vitamin D deficiency. *Id*. at 3; Pet. Ex. 10 at 1. Petitioner's counsel was further advised to discuss these disparities, as well as the cause of death provided in the autopsy, with petitioner in order to determine the direction of this case. *Id*. at 3-4.

Petitioner filed a status report ("Pet. S.R.") on January 29, 2018, advising that she intended to proceed with her claim and engage an expert witness. Pet. S.R. at 1, ECF No. 17.

During a status conference on February 13, 2018, respondent questioned whether there was reasonable basis for petitioner to proceed with this claim. Scheduling Order at 1, ECF No. 18. Petitioner was cautioned that she may be proceeding at her own risk, and any costs and attorneys' fees going forward may not be compensated. *Id*. Petitioner was instructed that any expert who authored a report in this matter must rely only on the facts as provided by the medical records and should not base his or her report on petitioner's version of the facts, due to the previously detailed inconsistencies with the medical records. *Id*. at 1-2. Petitioner was ordered to file an Amended Petition by March 15, 2018, and an expert report or a status report by May 14, 2018. *Id*. at 2.

Petitioner filed an Amended Petition ("Am. Pet.") on March 9, 2018. ECF No. 20. The Amended Petition repeated the statements contained in the Petition. *See* Am. Pet. at ¶¶1-11. The Amended Petition alleged that Zaire's death was caused by the vaccinations he received on March 3, 2016, and not by hypocalcemia or hypovitaminosis D. *Id*. at ¶13. The Amended Petition alleged in the alternative that Zaire's death was caused by the vaccinations he received on December 23, 2015 and March 3, 2016. *Id*. at ¶14.

On May 11, 2018, petitioner filed a Motion to Suspend Proceedings. ECF No. 22. Petitioner requested that the proceeding be suspended for 30 days in order to find new counsel. *Id*. at 1. In the alternative, petitioner requested a 60-day extension of time to produce an expert report. *Id*.

Petitioner was granted a 60-day extension of time and ordered to file an expert report or a status report by July 13, 2018. Order at 1, ECF No. 23.

On July 13, 2018, petitioner filed a status report ("Pet. S.R.") advising that she had recently contacted a new attorney who agreed to review her file. Pet. S.R. at 1, ECF No. 24. Petitioner requested an additional 30 days to retain new counsel. *Id.* Petitioner was ordered to file a Motion to Substitute Attorney by August 13, 2018. Non-PDF Order, issued July 13, 2018.

On August 13, 2018, petitioner filed a Motion for Decision Dismissing the Petition. ECF No. 26. On August 14, 2018, I issued a Decision dismissing the petition. ECF No. 27.

On February 21, 2019, petitioner filed a Motion for Attorneys' Fees and Costs. Motion for Fees, ECF No. 32. Petitioner requested attorneys' fees in the amount of $26,140.60 and attorneys' costs in the amount of $1,370.71 for a total amount of $27,511.31. *Id.* at 1. Petitioner's counsel advised that petitioner was unable to be reached to complete a General Order No. 9 but affirmed that petitioner did not incur any out-of-pockets in connection with this litigation. *Id.* at 6.

On March 7, 2019, respondent filed a response to petitioner's Motion for Fees, questioning reasonable basis. Response, ECF No. 33.

On March 14, 2019, petitioner filed a reply. Reply, ECF No. 34.

This matter is now ripe for decision.

## II. Legal Framework

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). If a petitioner succeeds on the merits of his or her claim, he or she is entitled to an award of reasonable attorneys' fees and costs. *Id.*; *see Sebelius v. Cloer*, 133 S. Ct. 1886, 1891 (2013). However, a petitioner need not prevail on entitlement to receive a fee award as long as the petition was brought in "good faith" and there was a "reasonable basis" for the claim to proceed. § 15(e)(1).

The Federal Circuit has endorsed the use of the lodestar approach to determine what constitutes "reasonable attorneys' fees" and "other costs" under the Vaccine Act. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008). Under this approach, "an initial estimate of a reasonable attorneys' fee" is calculated by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Id.* at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). That product is then adjusted upward or downward based on other specific findings. *Id.*

Special masters have substantial discretion in awarding fees and may adjust a fee request *sua sponte*, apart from objections raised by respondent and without providing petitioners with notice and opportunity to respond. *Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009). Special masters need not engage in a line-by-line analysis of petitioner's fee

application when reducing fees. *Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011).

### III. Applicable Law and Analysis

#### A.    Good Faith and Reasonable Basis

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). If a petitioner succeeds on the merits of his or her claim, he or she is entitled to an award of reasonable attorneys' fees and costs. *Id.*; *see Sebelius v. Cloer*, 133 S. Ct. 1886, 1891 (2013). However, a petitioner need not prevail on entitlement to receive a fee award as long as the petition was brought in "good faith" and there was a "reasonable basis" for the claim to proceed. § 15(e)(1).

Good faith is a subjective inquiry that questions whether petitioner's counsel exercised adept professional judgement in determining whether a petitioner may be entitled to compensation. *Chuisano v. United States*, 116 Fed. Cl. 276, 286 (2014) (citations omitted). In the absence of a showing of bad faith, petitioners in the Vaccine Program are "entitled to a presumption of good faith." *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996).

Reasonable basis is an objective standard determined by evaluating the sufficiency of the medical records in petitioner's possession at the time the claim is filed. However, "a claim may have had a reasonable basis at the time of its filing, [but] reasonableness may later come into question if new evidence becomes available or the lack of supporting evidence becomes apparent." *Chuisano*, 116 Fed. Cl. at 288 (internal citations omitted). Ultimately, reasonable basis considers the "totality of the circumstances" and "looks not at the likelihood of success" but rather "the feasibility of the claim." *Id.* at 286, 288. "Special masters have historically been quite generous in finding reasonable basis for petitions." *Turpin v. Sec'y of Health & Human Servs.*, No. 99-564, 2005 WL 1026714 at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005).

The Federal Circuit recently denied an award of attorney's fees based on petitioner's lack of reasonable basis in *Simmons v. Secretary of Health and Human Services.* 875 F.3d 632, 636 (Fed. Cir. 2017). In *Simmons*, the Federal Circuit determined that petitioner lacked reasonable basis for filing a claim when, at the time of filing: (1) petitioner's counsel failed to file proof of vaccination, (2) there was no evidence of a diagnosis or persistent injury allegedly related to a vaccine in petitioner's medical records, and (3) the petitioner had disappeared for approximately two years prior to the filing of the petition and only resurfaced shortly before the statute of limitations deadline on his claim expired. *See id.* at 634-35. The Federal Circuit specifically stated that the reasonable basis inquiry is objective and unrelated to counsel's conduct prior to filing a claim. The Court consequently affirmed the lower court's holding that petitioner's counsel lacked reasonable basis in filing this claim based on the insufficiency of petitioner's medical records and proof of vaccination at the time the petition was filed. *Id.* at 636.

In light of *Simmons*, the Court of Federal Claims determined, "[I]n deciding reasonable basis[,] the Special Master needs to focus on the requirements for the petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible

claim for recovery. . . Under the objective standard articulated in *Simmons*, the Special Master should have limited her review to the claim alleged in the petition to determine if it was feasible based on the materials submitted." *Santacroce v. Sec'y of Health & Human Servs.*, No. 15-555V, 2018 WL 405121 at *7 (Fed. Cl. 2018). When evaluating a case's reasonable basis, petitioner's "burden [in demonstrating reasonable basis] has been satisfied . . . where a petitioner has submitted a sworn statement, medical records, and [a] VAERS report which show that recovery is feasible." *Id.* Moreover, the special master may consider various objective factors including "the factual basis of the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289 (2018).

Petitioner submitted that her claim maintained reasonable basis throughout the proceeding based on "possible alternatives theories for the cause of death." Motion for Fees at 8. According to petitioner, Zaire could have suffered from a vaccine-induced seizure which lead to his cardiac arrest and brain injury. *Id.* at 9. Petitioner stated, "There is indication in the records that Zaire might have had a seizure in the early morning of March 4, 2016, the same day he was found unresponsive on the couch." *Id.* (citing Pet. Ex. 1, Pet. Ex. 5 at 17). Petitioner noted that the medical examiner considered this possibility in the autopsy report. *Id.* (citing Pet. Ex. 5 at 17). Petitioner admitted that the issue of reasonable basis was raised during a status conference on February 13, 2018 but submitted that counsel's work following that status conference was necessary in order to "afford Petitioner her rights under the rules of this Court to seek alternative representation or to close the matter." *Id.* at 10.

Respondent submitted that petitioner's claim never had a reasonable basis and all attorneys' fees should be denied. Response at 6, n.7. Respondent stated that there was lack of objective evidence to support petitioner's claim, citing the medical examiner's opinion that Zaire's death was caused by hypocalcemia and hypovitaminosis D. *Id.* at 9. Respondent further submitted, "Even if this claim had met the Table definition of 'acute encephalopathy' it would have fallen within the exclusionary criteria in which the potential encephalopathy was caused by 'a[n] underlying condition or systematic disease shown to be unrelated to the vaccine.'" *Id.* at 5-6, n.5 (citing 42 C.F.R. § 100.3(c)(2)(ii)(A) (2017)).

In her Reply, petitioner pointed to *Johnson v. Sec'y of Health & Human Servs.*, No. 07-138V, 2010 WL 3291932, at *15 (Fed. Cl. Spec. Mstr. July 30, 2010), submitting that the facts and theory herein are sufficiently similar to *Johnson* to sustain reasonable basis. Reply at 3-5. In *Johnson*, an infant "received his 2-month vaccines and subsequently exhibited symptoms such as low-grade fever, lethargic, hysterical, loss of appetite, and arm jerking movements (the initial signs of a seizures." *Id.* at 4. The infant was "diagnosed with anoxic encephalopathy with overwhelming brain damage and cardiorespiratory arrest." *Id.* Based on the petitioner's expert's opinion "that [the infant's] death was due to encephalopathy and seizure caused by the pertussis vaccine" the special master found that the petitioner was entitled to compensation. *Id.* Other petitioners have also been successful bringing claims where the injured party experienced seizures and/or encephalopathy following vaccination. *See James ex rel. Chee v. Sec'y of Health & Human Servs.*, No. 09-284V, 2010 WL 4205699, *16-17 (Fed. Cl. Spec. Mstr. Sept. 30, 2010) (Finding that the acellular pertussis vaccine was a "substantial cause" of the vaccinee's death where the "medically fragile" four-month-old vaccinee received a second dose of acellular pertussis and suffered apnea and cardiac arrest resulting in his death fourteen hours after vaccination); *Perez v. Sec'y of Health*

*& Human Servs*, No. 05-1261V, 2008 WL 763301, at *41 (Fed. Cl. Spec. Mstr. Mar. 4, 2008) (Finding that the DTaP vaccine caused two-month-old vaccinee's encephalopathy and subsequent death).

Petitioner noted that Zaire had a similar presentation to the vaccinee in *Johnson*: after receiving his 4-months vaccinations, Zaire "exhibited symptoms of a low-grade fever, was fussy and irritable, and exhibited a change in his general disposition" and experienced an "episode of shaking and convulsions and developed a blank stare." Reply at 5. Additionally, Zaire was also diagnosed with anoxic brain injury following cardiopulmonary arrest. Pet. Ex. 5 at 17. Indeed, while the medical examiner ultimately concluded that Zaire's death was due to vitamin D and calcium deficiencies, she noted in the autopsy report that "seizures and cardiac arrhythmias [were] also possible complications." *Id*. The medical examiner cited Ms. Thomas's description of Zaire's episode of "shaking and staring" the morning of his admission to the hospital. *Id*. Respondent is correct that Zaire's alleged injury would not have fit the criteria for an on-Table encephalopathy. However, it appears that the potential may have existed for an off-Table claim of encephalopathy at the time of filing, based on the combination of Zaire being "medically fragile" due to vitamin D and calcium deficiencies, the likelihood that he may have experienced a seizure within fourteen hours of his four-month vaccinations, and the postmortem findings of anoxic brain injury and cardiopulmonary arrest. Accordingly, I find that there was a reasonable basis for petitioner to bring her claim at the time of filing.

Furthermore, this claim maintained reasonable basis until petitioner was unable to obtain an expert to opine in support of her claim. A petitioner is not required to obtain an expert before filing a petition in order to satisfy the reasonable basis standard. *Carter v. Sec'y of Health & Human Servs*., 132 Fed. Cl. 372, 382 (2017). During a status conference on February 13, 2018, respondent questioned whether there was a reasonable basis for the claim to proceed. Scheduling Order, ECF No. 18. Petitioner requested the opportunity to file an expert report, which was permitted. *Id*. Petitioner was ordered to file an expert report by May 14, 2018. *Id*. On May 11, 2018, petitioner filed a Motion requesting either a stay of proceedings or an extension of time to produce an expert report; petitioner was ordered to file an expert report by July 13, 2018. Motion, ECF No. 22; Order, ECF No. 23. Petitioner initially sought to obtain alternative counsel, but soon after chose to dismiss her claim. *See* Status Report, ECF No. 24; Motion for Decision Dismissing the Petition, ECF No. 26.

Special masters have found that attorneys may be compensated for work performed after a matter has lost reasonable basis when such work consists of tasks done to "wrap up" the case. *See, e.g., Swick v. Sec'y of Health & Human Servs*., No. 13-526V, 2018 WL 6009290, at *6 (Fed. Cl. Spec. Mstr. Oct. 22, 2018) (Finding that petitioners' counsel "should be compensated for a short amount of time used to wrap up the case"); *Davis v. Sec'y of Health & Human Servs*., No. 15-277V, 2016 WL 3999784, at *5 (Fed. Cl. Spec. Mstr. July 5, 2016) (Awarding attorneys' fees where "[t]he billing records support[ed] that when petitioner's counsel was unable to find an expert…he spent time communicating with petitioner about his withdrawal and preparing his interim fee application"); *Hiland v. Sec'y of Health & Human Servs*., No. 10-491V, 2012 WL 542683, at *9 (Fed. Cl. Spec. Mstr. Jan. 31, 2012) ("It is reasonable for counsel to 'wrap up' the case once she decides she can no longer represent the client…"). When petitioner's counsel could not obtain an expert report in support of this claim, counsel secured time for petitioner to seek

alternative counsel, and then helped her to dismiss her claim. The attorneys' fees incurred after this matter lost reasonable basis were related to "wrapping up" this case and therefore counsel should be compensated.

**B.      Reasonable Attorneys' Fees and Costs**

Special masters are "afforded wide discretion in determining the reasonableness" of attorneys' fees and costs. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F. 3d 1375 (Fed. Cir. 1994). Special masters are not required to conduct a "line by line" analysis of a fee request but may rely on their prior experience to determine a reasonable fee award. *Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011); *Saxton By and Through Saxton v. Sec'y of Health & Human Servs.*, 3 F. 3d 1517, 1521 (Fed. Cir. 1993).

Petitioner requested attorneys' fees in the amount of $26,140.60 and attorneys' costs in the amount of $1,370.71 for a total amount of $27,511.31. Motion for Fees at 1, ECF No. 32. After reviewing the billing records, I find that the overall amount[5] of attorneys' fees and costs requested by petitioner is reasonable and should be awarded in full.

### IV. Total Award Summary

Based on the foregoing, the undersigned **awards the total of $27,511.31**,[6] representing reimbursement for attorneys' fees in the amount of $26,140.60 and costs in the amount of $1,370.71, in the form of a check made payable jointly to petitioner and petitioner's counsel, Jessica Wallace, Esq. The Clerk of the Court is directed to enter judgment in accordance with this Decision.[7]

**IT IS SO ORDERED.**

**s/ Mindy Michaels Roth**
Mindy Michaels Roth
Special Master

---

[5] I have made no determination as to appropriate hourly rates in this matter; I merely conclude that the total sums requested seem reasonable and appropriate.

[6] This amount is intended to cover all legal expenses incurred in this matter.  This award encompasses all charges by the attorney against a client, "advanced costs" as well as fees for legal services rendered. Furthermore, § 15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein.  *See generally Beck v. Sec'y of Health & Human Servs.*, 924 F.2d 1029 (Fed. Cir. 1991).

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.